IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BURNAM LELAND LOWELL,

    Petitioner,               2: 07 - cv - 2450 - MCE TJB

    vs.

JAMES A. YATES, Warden

    Respondent.           <u>ORDER AND FINDINGS AND</u>

                                                    <u>RECOMMENDATIONS</u>

_____/

I. INTRODUCTION

Petitioner is a state prisoner proceeding with a counseled application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial, Petitioner was convicted of numerous sexual offenses against his son as well as several offenses of animal abuse. Petitioner seeks federal habeas relief on three grounds; specifically: (1) Petitioner's due process and fair trial rights were violated because of the joinder of the animal abuse and sexual abuse charges ("Claim I"); (2) Petitioner's trial counsel was ineffective for failing to renew a motion to sever the animal abuse from the sexual abuse charges ("Claim II"); and (3) Petitioner's rights to due process, to present a defense, to a fair trial and to confront a witness were violated when the trial court instructed the jury using CALJIC 2.20.1 which improperly bolstered the minor victim's

1

credibility ("Claim III"). Petitioner also requests leave to conduct discovery as well as an evidentiary hearing.

## II. FACTUAL BACKGROUND[1]

Defendant was born on May 1, 1974. His oldest son (the victim) was born in March 1993. Ever since the victim was two years old, defendant's aunt and her husband, Charlene and Roy S., have been legal guardians of the victim, who apparently never lived with his biological mother.

From June 1997 until January 2000, the victim lived with defendant, although the guardianship continued. During that time, the household included the victim, defendant, defendant's wife, Barbara Lowell, defendant's and Barbara's two younger children, and Barbara's daughter by a prior relationship. Defendant's brother and his wife, Matt and Deborah Lowell, and defendant's sister, Samantha Lowell, had homes nearby defendant's residence. Defendant bred American Staffordshire terriers, also known as American pit bull terriers. In January 2000, he had 18 to 20 dogs, including a number of puppies. The victim helped take care of the dogs.

Defendant would sometimes go on a drinking binge. This would lead to arguments with Barbara. On those occasions, Barbara would take the children and leave. There was ample evidence that at least some of the time, she would leave the victim, who was not her child, with defendant. On some of those occasions, defendant's mother, Merrena Gonzales, would pick up the victim and take him to her home.

On the weekend of January 7 and 8, 2000, defendant was on a drinking binge. Barbara took the children, except the victim, and left. On January 8, 2000, a number of persons, including Charlene, were at Samantha's house to help her move. Defendant and the victim came to the house. Defendant appeared drunk at the time. Later in the day, Charlene overheard the victim tell his cousin that he was scared. When Charlene asked if everything was all right, the victim started crying, wrapped his arms around her, and said he was scared of defendant.

Charlene decided to take the victim to her house for a few days. When Charlene told defendant what she intended to do, he began yelling and said he would get people on the reservation to stop her. Defendant asked the victim if he was scared of defendant. The

---

[1] The factual background is taken from the California Court of Appeal, Third Appellate District opinion on direct appeal, People v. Lowell, No. C046314, 2006 WL 1163806 (Cal. App. 3d Dist. May 3, 2006) (non-published).

2

victim looked frightened or embarrassed and said that he was. As Charlene took the victim away, defendant told her that in nine days, when defendant was off parole, he was going to "kick" [her] ass" and that he would "come after [Charlene] and take [her] out." Defendant then became emotional and teary-eyed. As Charlene drove away with the victim in the backseat, defendant pointed in the window and looked at the victim as though warning him to keep his mouth shut.

Shortly thereafter defendant left the area. He testified that he went to brother's home in Williams and later left for Colusa, where he intended to gamble at a casino. He fell asleep and drove into a ditch. Eventually, Barbara picked up defendant in Colusa and took him to where she was staying in Davis.

On January 11, 2000, an animal control officer received a report that dogs were not receiving proper care at defendant's residence. The officer went to the home and discovered numerous adult dogs; most were in kennels, one was chained to a stake, and two were running loose. At least one of the adult dogs had wounds. The officer saw several living puppies, one with significant injuries, and at least three dead puppies with significant wounds, including decapitation. One puppy bore shoe marks. The animal control officer testified that the dogs lacked consumable food and water and did not have shelter from the weather. Based upon the accumulation of feces, he estimated that the kennels had not been cleaned in two weeks.

On January 19, 2000, Charlene and the victim were traveling into town when the victim asked whether he would have to go back to defendant. Charlene told him that if defendant petitioned for his return, a judge might decide the victim should go back and that he would have to tell the judge why he was scared. The victim wanted to know the kind of questions that the judge would ask, so Charlene said she would act like "Judge Judy." She asked the victim why he was scared. When he answered "because," she told him that was not reason enough. The victim then said that defendant did "nasties" to him. After more discussion, Charlene notified law enforcement.

The district attorney, law enforcement, and child welfare services in Yolo County developed a protocol for a multidisciplinary interview referred to as an MDI. Debbie Presti, a social worker with the child welfare services department and a certified interviewer, conducted an MDI with the victim. In the interview, the victim used a doll and drew pictures to illustrate what happened. He reported that defendant touched the victim on his front and bottom "privates," that the defendant made the victim touch defendant's privates, and that defendant orally copulated the victim. The first time such acts occurred was when the victim was five years old. The last time was the night before Charlene took

3

    him away when he was six years old. Defendant was always drunk when he did these things. Defendant also made the victim watch pornographic movies; the victim drew pictures to show the conduct portrayed in the movies.

    Law enforcement officers obtained a warrant and searched defendant's house. They discovered two pornographic videotapes in the location indicated by the victim. The videotapes depicted the type of conduct that the victim had described.

    The victim subsequently told Charlene that in addition to other conduct, defendant had sodomized him. A second MDI was held in which the victim reported that the defendant sodomized him on some occasions. He said he had not reported that before because he was "too embarrassed and stuff." He finally told Charlene because, in the victim' words, "God gave me the - the soul and the guts to tell her that night."

    Both MDI sessions were videotaped, and the tapes were played to the jury. At trial, the victim testified about defendant's sexual conduct with him.

Lowell, 2006 WL 1163806, at * 1-3 (footnote omitted).

### III. PROCEDURAL HISTORY

    Defendant was charged with distributing or exhibiting lewd material to a minor; making a criminal threat; three counts of sexual penetration with a foreign object upon a child under the age of 14 years and more than 10 years younger than the perpetrator; five counts of aggravated sexual assault by sodomy upon a child under the age of 14 years and 10 or more years younger than the perpetrator; three counts of lewd conduct with a child under the age of 14 years; nine counts of oral copulation with a child under the age of 14 years and more than 10 years younger than the perpetrator; five counts of sodomy with a child under the age of 14 years and more than 10 years younger than the perpetrator; three counts of killing, wounding or torturing an animal; and 18 counts of abusing an animal. As sentencing enhancements, the information charged that defendant had a prior serious felony conviction and had served a prior prison term . . .

    [T]he trial court dismissed three counts of oral copulation with a child. Another count of oral copulation with a child was dismissed . . . after the jury could not reach a verdict on that charge. Defendant was found not guilty of the three counts of killing, wounding, or torturing an animal. The jury convicted him on all other counts and, in a bifurcated proceeding, the trial court found the enhancement allegations to be true.

Id. at *3 (internal citations omitted). Petitioner was sentenced to 238 years, 8 months to life

4

1  imprisonment. On direct appeal, the California Court of Appeal, Third District reversed the
2  conviction on seven counts, and ordered the determinate prison term reduced by eight years. The
3  judgment was affirmed in all other respects. The California Supreme Court denied Petitioner's
4  petition for review.[2] Subsequently, on December 6, 2004, the United States Supreme Court
5  denied Petitioner's petition for writ of certiorari. See Lowell v. California, 549 U.S. 1077
6  (2006). In November 2007, Petitioner filed the instant federal habeas petition in this Court.

## IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States. See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies. See Lindh v. Murphy, 521 U.S. 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court. See 28 U.S.C. 2254(d).

If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a *de novo* review of a petitioner's habeas claims. See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). Additionally, if a state court reaches a decision on

---

[2] The California Supreme Court denied Petitioner's petition for review "without prejudice to any relief which defendant might be entitled after the United States Supreme Court determines in Cunningham v. California, No. 05-6551, the effect of Blakely v. Washington, (2004) 542 U.S. 296 and United States v. Booker, (2005) 543 U.S. 220, on California law." People v. Lowell, No. C046314 (Cal. July 12, 2006). The issues of Blakely/Booker are not at issue in this federal habeas petition.

5

the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). See Larson v. Palmateer, 515 F.3d 1057, 1062 (9th Cir. 2010).

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer v. Andrande, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)). "'[C]learly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" Id. This Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72. Under the unreasonable application clause, a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." See Williams v. Taylor, 529 U.S. 362, 409 (2000). Thus, "a federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is an objectively unreasonable application of clearly established federal law. See Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding . . . and only those precedents need be reasonably applied, we may look for guidance to circuit precedents.").

The first step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005). When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). In this case, the last reasoned state court opinion was from the California Court of Appeal, Third Appellate

District.

## V. PETITIONER'S CLAIMS FOR REVIEW

A.  Claim I

In Claim I, Petitioner claims that his due process and fair trial rights were violated when the trial court failed to sever the animal abuse and child sexual abuse counts. Before trial, defense counsel unsuccessfully moved to have the trial court sever the animal abuse charges from the sexual abuse charges. The California Court of Appeal analyzed this Claim on the merits and stated the following:

> The trial court denied the motion to sever for two reasons. First, the court reasoned that the manner in which defendant treated the dogs could be circumstantial evidence of intimidation of the victim and might explain why he submitted to molestation and kept quiet about it. Second, the court reasoned that the sexual molestations could establish motive for what happened to the dogs on the weekend Charlene took the victim from defendant's custody.
>
> At trial, there was some evidence in support of these theories. The victim testified that a dog named Shotgun was injured in a fight with another dog and suffered fatal injuries. He stated that sometimes defendant would put dogs together and let them fight. According to the victim, defendant would watch and would use a hose to stop the fight if it got "too crazy." However, while the victim testified he was afraid of defendant, he did not specifically relate this fear to defendant's treatment of the dogs.
>
> Defendant's mother testified that during 1999, defendant would allow the victim to stay with her some of the times when Barbara left the house because of defendant's drinking; but that defendant then stopped allowing the victim to stay with her. She testified his stated reason was the victim "tells [defendant's mother] everything." Charlene was the victim's guardian with whom he had lived a portion of his life and whom he often called "Mom."
>
> Defendant would have reason to fear that if the victim stayed with Charlene he might reveal the molestations. That would explain defendant's anger when Charlene took the victim home with her. And that the defendant's drinking could serve to explain why he might go on a violent rampage toward the dogs before leaving the area.
>
> While these theories of cross-admissibility are not compelling, they are logical inferences from the evidence. Hence, to warrant reversal, defendant must demonstrate that joinder actually resulted

7

in "gross unfairness," amounting to a denial of the due process of law. (People v. Arias, supra 13 Cal.4th at p. 127.) He has not done so.

In attempting to demonstrate prejudice, defendant asserts the "strong" case of animal abuse produced a spillover effect that unfairly strengthened or bootstrapped the "weak" sexual abuse case. (People v. Gutierrez, (2002) 28 Cal.4th 1083, 1120-1121.) Focusing on charges involving dead puppies, he asserts their injuries were grotesque and the dead puppy evidence was inflammatory. But the argument loses much of its force when we keep in mind that the jury found defendant not guilty of killing or wounding the puppies. If the jurors' passions were inflamed by the dead puppy evidence, it would be more logical that they would convict on those charges, rather than acquit defendant but enter a spillover conviction on other charges.

The remaining animal abuse charges were neither particularly strong nor particularly inflammatory. The county animal control officer testified that on January 11, 2000, the dogs lacked consumable food and water, but that the dogs otherwise were in good shape, did not appear malnourished, and were not aggressive. It appeared that defendant had left the area without making adequate provision for the dogs' care, but the lack of care did not appear to have been long-standing or continuous.

We disagree with defendant's view that the sexual abuse charges presented a weak case. As is often the case with child molestation charges, the revelations of the child constituted the primary evidence. Many children who have been sexually abused are embarrassed and can have difficulty explaining what happened. The victim was no exception. However, the two MDI interviews and the victim's trial testimony indicate the victim was a credible witness with respect to the fact that the molestation occurred. Indeed, in ruling on a motion for a new trial, the trial court stated that if the matter had been tried to the court, it would have credited the victim's testimony as the jury did. In addition, parts of the victim's revelations were corroborated. For example, pornographic videos depicting the conduct described by the victim were located where he said they would be. And in his interviews and at trial, the victim said defendant was always drunk when he engaged in sexual misconduct, which would correspond to times Barbara left the house with the other children. Barbara claimed that she left the victim with defendant only one time; however, defendant's mother reported that Barbara left the house about every other weekend and that most of the time she did not take the victim with her. Also, while defendant suggested that Charlene instigated the accusations because she wanted to get child support from him, he was unable to present credible evidence that Charlene acted from anything but concern for the victim's welfare.

8

> In summary, the evidence of the puppy deaths may have been somewhat gruesome; but sexually molesting a young child is far more opprobrious. The possibility that the passions of the jury were inflamed by evidence of dead puppies is dispelled by the acquittals on the charges of killing or wounding the puppies. We reject the contention that the sexual abuse charges presented a weak case. And, particularly in view of the acquittals for the puppy deaths, we conclude the sexual abuse charges were not unfairly strengthened or bootstrapped by evidence of animal abuse. For these reasons, and upon consideration of the entire record, we conclude defendant has not shown that the joint trial of the charges resulted in gross unfairness amounting to the denial of due process.

Lowell, 2006 WL 1163806, at *4-6.

Petitioner argues that United States v. Lane, 474 U.S. 438 (1986) clearly establishes that misjoinder of charges rises to the level of a constitutional violation "if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." Id. at 446 n.8. According to Petitioner, the prejudice rose to that level because the animal abuse charges (specifically photographs of the dead puppies), had a substantial and injuries effect on the jury in determining the verdict on the sexual abuse charges.

Error "involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 449 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Federal habeas relief is available for improper consolidation only if the "simultaneous trial of more than one offense . . . actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process." Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991); see also Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004) ("The requisite level of prejudice is reached only if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict.") (internal quotation marks and citation omitted). In evaluating the prejudice suffered by the Petitioner, the focus is "particularly on [the] cross-admissibility of evidence and the danger of 'spillover' from one charge to another, especially where one charge or set of charges is weaker than another." Id. The reason that there

9

1  is danger in this situation "is that it is difficult for a jury to compartmentalize the damaging
2  information." Sandoval v. Calderon, 241 F.3d 765, 772 (9th Cir. 2000).

3        Petitioner asserts that "the introduction of inflammatory animal abuse evidence, including
4  the argument that petitioner committed the abuse, affected the ability of the jury to render a fair
5  and impartial decision based upon the facts rather than emotion." (Pet'r's Pet. at p. 14.)
6  However, in this case, the state court's decision rejecting Petitioner's argument was not an
7  unreasonable application of clearly established federal law. As noted above, the California Court
8  of Appeal stated that "[t]he possibility that the passions of the jury were inflamed by evidence of
9  dead puppies is dispelled by the acquittals on the charges of killing or wounding the puppies."
10 Lowell, 2006 WL 1163806, at *6. The Ninth Circuit has "held that the failure of the jury to
11 convict on all counts is the best evidence of the jury's ability to compartmentalize the evidence."
12 Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2004) (internal quotation marks and citations
13 omitted). In this case, the jury did not convict Petitioner on the three charges of killing or
14 wounding animals. This constitutes strong evidence that Petitioner was not prejudiced by the
15 dead and abused photographs of puppies as to his convictions on the sexual abuse charges. See
16 id. (staring that the jury did not convict petitioner on two counts, which constituted "strong
17 evidence" that petitioner "was not prejudiced by the admission of evidence which was possibly
18 irrelevant with regard to some of the counts"). In this case, the jury must have found the
19 victim's testimony credible. Had the evidence of the animal abuse charges been stronger than the
20 sexual abuse charges, Petitioner presumably would have been convicted of the three malicious
21 killing, wounding or torturing animals charges. The acquittals on these charges indicates the
22 jury's ability to compartmentalize the animal abuse evidence from the sexual abuse evidence.
23 Petitioner is not entitled to relief on Claim I because he has not shown that the joinder of the
24 animal abuse charges had a substantial and injurious effect or influence in determining the jury's
25
26

verdict on the sexual abuse charges.[3]

---

[3] Respondent argues in his Answer that there is no direct United States Supreme Court precedent that clearly establishes that the purported misjoinder of charges in this case offends the United States Constitution. Respondent specifically cites to the recent Ninth Circuit case, Collins v. Runnels, 603 F.3d 1127 (9th Cir. 2010), petition for cert. filed, (U.S. June 24, 2010) (No. 10-5114) to support his argument that this Court need not reach the merits of this Claim because there is no "clearly established" federal law as determined by the United States Supreme Court. In Collins, the Ninth Circuit analyzed "whether clearly established Supreme Court precedent binding on the states requires trial severance where a co-defendant presents a mutually antagonistic defense." Id. at 1128. The Ninth Circuit then analyzed Lane and stated the following:

> Lane dealt with the joinder of standards under Federal Rules of Criminal Procedure 8 and 52; no constitutional issue was before the Court. "[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to holdings, *as opposed to dicta*, of this Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (emphasis added). In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The footnote upon which Collins relies did not set forth the governing legal principle in Lane. It was merely a comment.
> When the Supreme Court does not purport to interpret any provision of the Constitution, then "[t]hat alone would be enough to defeat a claim that [the] application [of the case] to state-court proceedings is 'clearly established.'" Early v. Packer, 537 U.S. 3, 10, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam). Here, Lane expressly stated that "[i]mproper joinder does not, in itself, violate the Constitution." 474 U.S. at 446 n.8, 106 S.Ct. 725. Collins argument that Lane applies to state courts fails for that reason.

Id. at 1132. Thus, the Ninth Circuit held that Lane did not "establish a constitutional standard binding on the states requiring severance in cases where defendants present mutually antagonistic defenses." Id. at 1132-33. This Court need not and declines to reach the issue of whether Lane clearly established that the purported misjoinder of the animal abuse and sexual abuse charges in this case could offend the United States Constitution. As detailed above, even if Lane did so "clearly establish," Petitioner's claim would still fail on the merits because he failed to show that the impermissible joinder of the animal abuse charges had a substantial and injurious effect or influence in determining the jury's verdict on the sexual abuse charges.

B.  Claim II

Next, Petitioner alleges that trial counsel was ineffective for failing to renew a motion to sever the animal abuse charges from the sexual abuse charges. Petitioner argues that trial counsel should have renewed the severance motion at several points during the proceedings; specifically: " (1) at the April 24, 2002 *in limine* hearing wherein the prosecutor admitted that its earlier proffer did not reflect the true state of the facts and the court, through its comments, suggested renewal of the motion; (2) at the conclusion of the Evidence Code section 402 hearing when it became apparent that the facts supporting the proffer were not going to come out at trial," and (3) at the conclusion of the victim's testimony "when it became clear his testimony did not support the prosecutor's proffer." (Pet'r's Pet. at p. 13.) The California Court of Appeal rejected Petitioner's ineffective assistance of counsel claim and stated the following:  "[we] already have discussed why defendant has not shown prejudice from joint trial of the offenses. For the same reasons, we conclude defendant has not demonstrated prejudice from the failure of trial counsel to renew the motion to sever." Lowell, 2006 WL 1163806, at *7.

The Sixth Amendment guarantees effective assistance of counsel. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel. First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court then must determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id.

Second, a petitioner must affirmatively prove prejudice. See id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. A reviewing court "need not

12

determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (citing Strickland, 466 U.S. at 697).

In this case, it is easier to dispose of Petitioner's ineffective assistance claim on the ground of a lack of sufficient prejudice. Petitioner failed to show prejudice warranting a reversal in his convictions in trial counsel's failure to renew the severance motion. As previously noted, Petitioner was acquitted on the three malicious killing, wounding or torturing animals charges by the jury. This constituted strong evidence that the jury was able to compartmentalize the different evidence between the animal and sexual abuse charges. See Park, 202 F.3d at 1150. Petitioner has not shown to a reasonable probability that had trial counsel renewed the severance motion, the result of the proceeding would have been different. As noted in Part V.A, the jury obviously found the victim's testimony credible so as to find Petitioner guilty on several sexual abuse charges. The state court's denial of this Claim was not an unreasonable application of clearly established federal law. Petitioner is not entitled to federal habeas relief on Claim II.[4]

C. Claim III

Next, Petitioner alleges in Claim III that when the trial court instructed the jury using CALJIC No. 2.20.1, it violated his constitutional rights to due process, to present a defense to confront and cross-examine witnesses and to a fair trial. The California Court of Appeal, Third Appellate District analyzed this Claim on the merits and stated the following:

> The trial court instructed the jury as follows, consistent with

---

[4] In his traverse, Petitioner argues that it is uncertain whether the California Court of Appeal actually applied the Strickland prejudice standard. However, the California Court of Appeal specifically cited to Strickland in stating the applicable ineffective assistance of counsel standard. It then determined that Petitioner failed to show prejudice due to counsel's purported failure to renew the sever motion. See Lowell, 2006 WL 1163806, at *7. Petitioner's contention that the state court misapplied the Strickland standard is without merit.

13

> CALJIC NO. 2.20.1: "In evaluating the testimony of a child ten years of age or younger, you should consider all of the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development. A child, because of age and cognitive development, may perform differently than an adult as a witness, but that does not mean that a child is any more or less believable than an adult. You should not discount or distrust the testimony of a child solely because he or she is a child. [¶] Cognitive means the child's ability to perceive, to understand, to remember, and to communicate any matter about which the child has knowledge."
>
> The first paragraph of CALJIC No. 2.20.1 is an instruction that the Legislature has directed must be given upon request of a party in any criminal proceeding in which a child 10 years of age or younger testifies. (§ 1127f.) The last paragraph, and sentence of the instructions is in addition to the statutory provision.
>
> Defendant contends the instruction dictated by section 1127f and embodied in CALJIC number 2.20.1 is unfair and unconstitutional. We disagree.
>
> The trial court fully instructed the jurors on the factors to consider in determining the believability of a witness and the wright to give testimony. The challenged instruction merely told the jurors not to discount the testimony of a witness solely because the witness is a child. The contentions defendant makes have been rejected in several decisions of the Courts of Appeals. (People v. Jones (1992) 10 Cal.App.4th 1566, 1572-1574; People v. Gilbert (1992) 5 Cal.App.4th 1372, 1392-1394; People v. Harlan (1990) 222 Cal.App.3d 439, 455-456; see also People v. Jones, supra, 51 Cal.3d at p. 315.) We also reject the challenge for the reasons stated in those decisions.

Lowell, 2006 WL 1163806, at *12.

When challenging a jury instruction in a habeas petition, the petitioner must prove that the instruction in question so infected the entire trial that the resulting conviction violates due process. See Spivey v. Rocha, 194 F.3d 971, 976 (9th Cir. 1999) (citing Estelle v. McGuire, 502 U.S. 62, 72 (1991)). "The instruction must be viewed in the context of the entire trial and the jury instructions taken as a whole." Id. The relevant inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a manner that prevents the consideration of constitutionally relevant evidence." Boyde v. California, 494 U.S. 370, 380 (1990). The Ninth Circuit has already rejected a similar due process challenge to CALJIC No.

14

2.20.1. See Brodit v. Cambra, 350 F.3d 985, 990 (9th Cir. 2003). In Brodit, the Ninth Circuit stated that:

> In Cupp v. Naughten, 414 U.S. 141, 142, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), the Supreme Court held that a state judge's instruction to a jury at a criminal trial advising that "[e]very witness is presumed to speak the truth," and explaining ways in which that presumption might be overcome, did not violate due process. (Internal quotation marks omitted). Even if such an instruction were undesirable, erroneous, or universally condemned, a state conviction would not be overturned unless the instruction "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Id. at 146, 94 S.Ct. 396.
> In view of Cupp's strict standard for evaluating state courts' jury instructions and the California Court of Appeal's reasoned explanation that CALJIC 2.20.1 merely prevents disregard of a child's testimony, but does not amplify the testimony, Petitioner's federal challenge must fail.

Brodit, 350 F.3d at 990. The rationale as stated in Brodit similarly applies to a finding that CALJIC 2.20.1 did not violate Petitioner's right to present a defense, to confront a witnesses and to a fair trial. Therefore, Petitioner is not entitled to federal habeas relief on Claim III.

D. Request to Leave to Conduct Discovery

Petitioner also requests that this Court grant him leave to conduct discovery. (Pet'r's Pet. at p. 17.) Parties to a habeas proceeding are not entitled to discovery as a matter of course. See Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rather, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a), Rules Governing § 2254 Cases; see also Bracy, 520 U.S. at 904. Good cause is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Id. at 908-09 (internal quotation marks and citation omitted); see also Pham v. Terhune, 400 F.3d 740, 743 (9th Cir. 2004). A request for discovery "must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6(b), Rules Governing § 2254 Cases.

In this case, Petitioner has failed to show good cause to warrant his request for discovery

15

1 as he has not shown reason to believe that he would be entitled to relief if facts are more fully
2 developed.

### E. Request for an Evidentiary Hearing

Finally, Petitioner requests an evidentiary hearing concerning his claims. Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166-67 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citations omitted). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

In this case, an evidentiary hearing is not warranted. Petitioner failed to demonstrate that he has a colorable claim for federal habeas relief for the reasons stated in Parts V.A-D.

### VI. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Petitioner's request for leave to conduct discovery is DENIED; and

2. Petitioner's request for an evidentiary hearing is DENIED;

IT IS HEREBY RECOMMENDED that Petitioner's Petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are

16

1 advised that failure to file objections within the specified time may waive the right to appeal the
2 District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In any objections he
3 elects to file, petitioner may address whether a certificate of appealability should issue in the
4 event he elects to file an appeal from the judgment in this case. *See* Rule 11, Federal Rules
5 Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability
6 when it enters a final order adverse to the applicant).

DATED: September 9, 2010

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE